UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.: 9:23-cv-05049
SEPIDEH GHOLIZADEH AGHDAM,

                               Plaintiff,                           **COMPLAINT**

            -against-                                Plaintiff Demands a
                                                                                 Trial By Jury

STAR NISSAN, INC. and JOHN KOUFAKIS JR.,
individually,

                             Defendants.
------------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Arcé Law Group, P.C., hereby complains of the Defendants, upon information and belief, as follows:

## INTRODUCTION

1. This is a case about the owner of a car dealership, who exploited his position of power to sexually harass a female employee, and then terminated said employee once he realized that she would not reciprocate his sexual advances.

2. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), the New York State Executive Law, §§ 296 et seq. ("NYSHRL"), and the New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries she has suffered as a result of being discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 42 U.S.C. 2000e *et seq*.; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

4. This action involves a Question of Federal Law.

5. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

6. On or about November 15, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. On or about April 12, 2023, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

8. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

9. Plaintiff is a female resident of the State of New York, County of Nassau.

10. At all times material, Defendant STAR NISSAN, INC. (hereinafter "STAR NISSAN") was and is a domestic business corporation duly incorporated under the laws of the State of New York.

11. At all times material, Defendant STAR NISSAN owned and operated a Nissan car dealership located at 20602 Northern Blvd, Queens, New York 11361.

12. At all times material, Defendant JOHN KOUFAKIS JR. (hereinafter "KOUFAKIS") was and is a male resident of the State of New York.

13. At all times material, Defendant KOUFAKIS was and is a "Co-Owner" of Defendant STAR NISSAN.

14. At all times material, Defendant KOUFAKIS was and is Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

15. Defendant STAR NISSAN and Defendant KOUFAKIS are hereinafter also collectively referred to as "Defendants."

16. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

17. In or around 2017, Plaintiff and her husband moved into an apartment building that was owned by John Koufakis, Sr., who is Defendant STAR NISSAN's founder, and Defendant KOUFAKIS' father.

18. As an ancillary matter, in or around 2020, Plaintiff and her husband lost their business due to the COVID-19 pandemic, and the economic downturn resulting therefrom.

19. Nevertheless, in or around July 2021, Mr. Koufakis, Sr. passed away and Defendant KOUFAKIS assumed ownership of Plaintiff's apartment building.

20. Over the next year, Plaintiff and her husband became acquainted with Defendant KOUFAKIS by virtue of their landlord-tenant relationship.

21. As such, Defendant KOUFAKIS, who is married, was aware of the fact that Plaintiff and her husband had recently lost their business, and that Plaintiff was unemployed.

22. A year later, in or around February 2022, Defendant KOUFAKIS offered Plaintiff an opportunity to work at Defendant STAR NISSAN as a "Sales Representative," because according to him, Plaintiff was "**sweet and [he] want[ed] to *help*.**"

23. At that time, Plaintiff did not suspect Defendant KOUFAKIS' ulterior sexual motive and she accepted the offer employment.

24. Thus, on or about March 8, 2022, Plaintiff began working at Defendant STAR NISSAN as a Sales Representative, with an hourly pay rate of $15.00.

25. Plaintiff's primary job duties included searching for potential sales leads, booking appointments for the showroom, and maintaining communication with clients.

26. Initially, Plaintiff looked forward to working at Defendant STAR NISSAN and anticipated a long career with the company.

27. However, it soon became clear that Defendant KOUFAKIS hired Plaintiff hoping to take advantage of her vulnerable financial situation, and to manipulate her into a sexual relationship.

28. For example, during her first week at Defendant STAR NISSAN, Defendant KOUFAKIS *insisted* that Plaintiff sit in the office next to his.

29. Plaintiff thought this was odd, especially because there were other areas/desks in the dealership where she could work. Nevertheless, she complied at Defendant KOUFAKIS' insistence.

30. As another example, throughout the workday, Defendant KOUFAKIS would constantly stare at Plaintiff in a flirtatious manner, and try to make eye contact with her.

31. In fact, on one occasion, Defendant KOUFAKIS stared at Plaintiff seductively and stated, "**I am so happy that you started working for me**. **You make me feel young again and I like to being close to you**." Plaintiff became uncomfortable and awkwardly replied, "Thanks."

32. In further harassment, **Defendant KOUFAKIS invited Plaintiff to have lunch and dinner with him on a near-daily basis**. Plaintiff felt pressured by Defendant KOUFAKIS, but declined his invitations each time. Plaintiff even started bringing her own lunch to work, just to give Defendant KOUFAKIS an "excuse" for why she could not go out to eat with him.

33. Despite her repeated rejections, in or around April 2022, Defendant KOUFAKIS asked Plaintiff to join him for dinner again, this time at an "expensive" restaurant where "only rich people" eat. Plaintiff rebuffed Defendant KOUFAKIS' advance.

34. Then, in another attempt to coerce Plaintiff into a romantic relationship, Defendant KOUFAKIS stated, "**If you become my girlfriend, I will pay off all your credit card debt**."

35. Plaintiff was disgusted, and reminded Defendant KOUFAKIS that she was married, in hopes that it would deter any further advances.

36. However, later that month, Defendant KOUFAKIS offered to give Plaintiff a ride home after work. Plaintiff was apprehensive about being alone with Defendant KOUFAKIS, but reluctantly accepted the car ride because she feared retaliation if she refused.

37. True to form, several minutes into the drive, Defendant KOUFAKIS asked Plaintiff, "**Why don't you be my girlfriend? I could treat you like a princess**."

38. In response, Plaintiff reiterated to Defendant KOUFAKIS that she was in a committed marriage and was not interested in a romantic relationship with him

39. However, **Defendant KOUFAKIS persisted**, **placed his hand on top of Plaintiff's**, and stated, "**You're sweet**, **and money is nothing to me**. **Just think about it**."

40. Plaintiff did not respond, pushed Defendant KOUFAKIS' hand away, and exited the vehicle as soon as Defendant KOUFAKIS pulled up to her home.

41. Naturally, Plaintiff was disturbed by Defendant KOUFAKIS' incessant harassment and sexual propositioning.

42. However, Plaintiff did not complain because she did not want to lose her job, needed and income, and believed it would be futile because her harasser was the owner of the company.

43. Consequently, the sexual harassment continued.

44. For example, later that month, Defendant KOUFAKIS approached Plaintiff completely unprompted, **tapped the top of her left breast with his fingers**, and stated, "**I really want to

5

**get to your heart and discover you**." Plaintiff was distraught by this sexual assault, reminded Defendant KOUFAKIS that she was married, and abruptly walked away.

45. Yet, unfortunately for Plaintiff, **Defendant KOUFAKIS would go on to touch Plaintiff's breast in a similar manner on two other occasions while she was worked at Defendant STAR NISSAN**, all under the guise of conversations about "wanting to get to her heart."

46. Then, in or around April 2022, Defendant KOUFAKIS called Plaintiff into his office and asked Plaintiff if she wanted a lollipop. Plaintiff said she did not.

47. Defendant KOUFAKIS then stated, "**You are like a lollipop to me**, **and I am a kid who isn't allowed to have a lollipop**." Plaintiff did not respond to Defendant KOUFAKIS' sexual innuendo, abruptly left his office, and returned to work.

48. Over the next month, Plaintiff tried to ignore Defendant KOUFAKIS and focus on her duties.

49. However, **Defendant KOUFAKIS continued to invite Plaintiff out for lunch on a near-daily basis**, **and repeatedly asked Plaintiff to be his girlfriend**, **irrespective of her refusals**.

50. Moreover, Defendant KOUFAKIS would frequently turn conversations to personal matters.

51. For example, Defendant KOUFAKIS would frequently complain to Plaintiff about his wife, show Plaintiff photographs of his wife, and tell Plaintiff that she was "**prettier**."

52. To make matters worse, Defendant KOUFAKIS was almost always intoxicated when at work.

53. This all caused Plaintiff to fear for her safety, and she eventually informed and/or complained to her husband about Defendant KOUFAKIS' ongoing harassment.

54. Nevertheless, on or about May 13, 2022, Defendant KOUFAKIS called Plaintiff after work and invited her out to dinner. Plaintiff replied, "You know I have a husband [Defendant KOUFAKIS]. That's really not appropriate." Defendant KOUFAKIS responded, "**I can come**

**now if you want?  If you listen to me and be a good girl**, **I can give you whatever you want**." Plaintiff did not respond and immediately hung up the phone.

55. Then, *the very next day*, Defendant KOUFAKIS called Plaintiff and terminated her employment.  Defendant KOUFAKIS' stated reason for terminating Plaintiff was that she was not "getting along" with her female Manager, Diana Ljajcevic.

56. However, Defendant KOUFAKIS' stated reason for terminating Plaintiff is pretext, because prior to this conversation, Plaintiff had never been counseled, warned, or reprimanded for anything, let alone her interactions, or working relationship, with Ms. Ljajcevic.

57. The next day, Plaintiff' husband called Defendant KOUFAKIS to further inquire about the reason for Plaintiff's termination.

58. During the call, Plaintiff's husband recounted all of Defendant KOUFAKIS' harassing behavior, and complained that Plaintiff had been terminated for rejecting his advances.

59. Defendant KOUFAKIS responded, "**That's a *misunderstanding* … Did *it* ever happen?  Did I ever *pursue it*?  No!**" Plaintiff's husband replied, "Because she didn't want it!"

60. Nevertheless, at the end of the call, Defendant KOUFAKIS stated:

> "There's a bunch a woman in the office, they all don't get along.  Your wife can work for me anytime she wants. I will never say another word to her again because this is all a misunderstanding … If you're a little patient, I will find another position for her."

61. However, to date, Defendant KOUFAKIS has not offered Plaintiff another position and/or transfer at Defendant STAR NISSAN.

62. In reality, Defendant KOUFAKIS terminated Plaintiff because she would not succumb to his sexual advances.

63. The terms and conditions of Plaintiff's employment were based on her submission to, or rejection of Defendant KOUFAKIS' sexual advances.

7

64. Defendants would not have terminated Plaintiff but for her rejection of Defendant KOUFAKIS' sexual advances.

65. Defendants would not have harassed Plaintiff but for her sex/gender.

66. Defendants would not have retaliated against Plaintiff but for her opposition to Defendant KOUFAKIS' unlawful actions.

67. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

68. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

70. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

71. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION

72. Plaintiff repeats, reiterates, and realleges each and every allegation made in the Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of the Defendants.  Plaintiff complains of the Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

74. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## RETALIATION

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

    "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to their unlawful employment practices.

### AS A THIRD CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

78. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer…because of an individual's …sex/gender… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

80. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

81. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A FOURTH CAUSE OF ACTION
### UNDER THE NEW YORK STATE LAW
### RETALIATION

82. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

84. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to her employer's unlawful employment practices, and for complaining about sexual harassment.

### AS A FIFTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code Title 8-107(1) provides that: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived …gender…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107 (1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### RETALIATION

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner

11

       against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

90. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to wrongful termination.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in an unlawful employment practice prohibited by Title VII, the NYSHRL, and the NYCHRL on the basis of Plaintiff's sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and unlawful termination.

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 5, 2023
New York, NY

**ARCÉ LAW GROUP, P.C.**
*Attorneys for Plaintiff*

By: */s/Max C. Bracero, Esq.*
Max C. Bracero, Esq.
45 Broadway, Suite 430B
New York, NY 10006
212- 248 -0120
max.bracero@arcelawgroup.com